IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZABI ULLAH MOHAMMED,<br><br>Defendant. | CRIMINAL COMPLAINT<br><br>MJ-25-40-M-KLD<br><br>**CONSPIRACY TO COMMIT WIRE FRAUD**<br>Title 18 U.S.C. § 1349<br>(Penalty: 20 years of imprisonment, $250,000 fine, and three years of supervised release)<br><br>**WIRE FRAUD**<br>Title 18 U.S.C. §§ 1343, 2<br>(Penalty: 20 years of imprisonment, $250,000 fine, and three years of supervised release)<br><br>**IMPERSONATING A FEDERAL AGENT**<br>Title 18 U.S.C. §§ 912, 2<br>(Penalty: Three years of imprisonment, $250,000 fine, and one year of supervised release) |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A COMPLAINT

I, Shaun Schrader, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a complaint.

1

2. I am a Special Agent with the FBI and have served in this capacity since 2011. I am assigned to the Salt Lake City Field Office, Missoula, Montana Resident Agency. My current assignment includes the investigation of complex financial crime matters. Prior to my employment with the FBI, I was a Special Agent with the Internal Revenue Service – Criminal Investigation Division for six years. I am also a Certified Fraud Examiner.

3. As a Special Agent, I have received training in various aspects of criminal investigations dealing with criminal law, criminal tax law, money laundering, search, seizure, forfeiture, and various financial investigative techniques. I have attended continuing educational classes and seminars in various aspects of criminal investigation, dealing specifically with asset seizure and forfeiture, financial investigative techniques, and international financial fraud. My experience includes investigations of individuals, partnerships, and corporations. Many of these investigations involved illegal activities, such as mail or wire fraud, investment schemes, embezzlement, theft, currency reporting violations, narcotics trafficking, money laundering, and tax evasion.

4. I have been involved in the execution of numerous federal search warrants, which resulted in the seizure of hard copy and electronic evidence, including financial records, tax returns, bank records, accounting records, correspondence, and other documentation related to criminal activity.

2

5.      I have been involved in the execution of numerous federal seizure warrants, which resulted in the seizure of assets, including cash, vehicles, jewelry, and real property purchased with money traceable to proceeds of fraud and narcotic-related crimes.

6.      The facts in this affidavit come from my investigation, personal observations, my training and experience, and information obtained from other law enforcement officers, witnesses, and informants. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      As detailed more completely below, there is probable cause to believe that the following crimes have been committed: Conspiracy to Commit Wire, in violation of 18 U.S.C. § 1349, Wire Fraud, in violation of 18 U.S.C. §§ 1343, 2, and Impersonating a Federal Agent, in violation of 18 U.S.C. §§ 912, 2.

## PROBABLE CAUSE

8.      On April 26, 2025, Jane Doe, whose identity is known to law enforcement but protected here, contacted the Missoula County Sheriff's Office to report she believed she was the victim of fraud. Jane reported she was contacted telephonically on April 1, 2025, by someone purporting to be with "Amazon." The person inquired if Jane purchased some computer equipment. Jane advised she did not have an Amazon account, and she did not purchase any computer equipment.

3

The "Amazon" representative explained Jane was likely the victim of identity theft. The representative then said they would assist by transferring Jane to the Social Security Department.

9. After being transferred to the "Social Security Department," that representative told Jane that she was the victim of identity theft, and her identity had been used in potential money laundering. The representative then told Jane they would transfer her to a U.S. Marshal.

10. Jane was then connected to a "U.S. Marshal" by the name of "Carlos Silva." Silva explained that Jane's identity had indeed been stolen, to include her Social Security Number. Silva told Jane that in order not to be considered a suspect in the matter, and to assist with the investigation, she could not tell anyone what was occurring. Silva told Jane that to keep her funds safe, she needed to take all of her money out of her bank accounts so that it could be "legalized." Jane was assured the money would be returned to her.

11. Initially, Silva instructed Jane to withdraw $45,000.00 in cash from her bank account. After Jane advised Silva she had the cash, Silva said he would be sending an "agent" to her house to pick up the cash. On April 2, 2025, an "agent" arrived at Jane's house and picked up the package containing the cash.

4

12. Silva then instructed Jane to purchase gold, which would be picked up by another agent. On April 16, 2025, an "agent" arrived at Jane's home and picked up a package containing $212,000.00 in gold.

13. Silva then instructed Jane to purchase additional gold that would again be picked up by an agent. On April 18, 2025, an "agent" arrived at Jane's home and picked up a package containing $656,000.00 in gold.

14. After reporting the fraud to law enforcement, Jane advised she was still in contact with the scammers. Jane agreed to participate in a ruse attempt to get an "agent" to pick up another package from her home.

15. On April 29, 2025, at the direction of law enforcement, Jane contacted Silva and advised him she had another $57,000.00 for him. Jane also texted Silva a picture of what appeared to be $57,000.00. Silva told Jane he would be arranging an agent to pick the cash up from Jane's home.

16. Between April 29, 2025, and May 12, 2025, numerous phone calls and text messages were exchanged between Silva and Jane. In my training and experience, I know that text messages and phone calls generate interstate communications. During that time, Silva cancelled multiple scheduled pick ups and advised all "agents" were busy. Finally on May 12, 2025, an "agent" arrived at Jane's home for a pickup. Prior to the pickup, at the direction of Silva, Jane

5

provided Silva with a photograph of what she was wearing. Silva also provided Jane with a four-digit code that she was to provide to the driver.

17. At approximately 10:50 a.m., Jane received a phone call from Silva advising her the driver was outside her home. While on speaker phone with Silva, Jane exited her home, provided the driver with the code, and then provided him with the box that was supposed to contain the cash. In reality, the box contained a tracking device that was being monitored by law enforcement.

18. After accepting the box, the driver departed Jane's residence. Law enforcement personnel followed the vehicle to a nearby restaurant. The driver exited the vehicle, went inside the restaurant, and then returned to the vehicle.

19. While in the parking lot of the restaurant, it is believed the driver opened the box and discovered there was a tracking device in the box. The driver left the box and tracker in the parking lot and then departed.

20. Upon exiting the parking lot, the driver was observed driving at a high rate of speed out of the area.

21. At the direction of your affiant, marked patrol units with the Missoula County Sheriff's Office were asked to conduct a traffic stop of the vehicle. The stop was conducted near mile marker 100 on Interstate 90 as the vehicle was headed westbound.

6

22. During the stop, documents were discovered identifying the driver as Zabi Ullah Mohammmed (hereinafter "Mohammed"). The driver also later identified himself as Zabi Ullah Mohammed to your affiant.

23. The vehicle was determined to be a rental vehicle from Thrifty Car Rental. During a search of the vehicle, a backpack was located. Within the backpack, documents were discovered containing Mohammed's name. Those documents included airline tickets and car rental documents. Also located within the backpack was $68,987.00 in cash, mostly in $100 bills.

24. After his arrest, Mohammed was brought to the FBI's Missoula Resident Agency for an interview. During the interview, Mohammed advised he resided in New Jersey and that he had a master's degree in cyber security. Mohammed advised he was a legal permanent resident of the United States and that he was from India. Mohammed also advised he was an Uber driver.

25. Mohammed advised he was in Montana for work and that he picked things up for people.

26. Upon further questioning, Mohammed asked to speak with an attorney.

27. Your affiant monitored multiple phone calls between Jane and Silva. During the phone calls, your affiant observed the fact that Silva spoke with what

sounded to be an Indian accent. Based on knowledge and experience, your affiant knows that scams similar to this one often originate with operators located in India.

28.   After the arrest of Mohammed, Jane received a phone call from Silva. Silva asked Jane why she did this, referring to contacting law enforcement. Silva also informed Jane that she would not be receiving her money back.

## CONCLUSION

29.   As part of the scheme to defraud that is outlined above, numerous telephone calls and text messages were exchanged between Jane and the co-conspirators involved in this matter. Based upon my training and experience, these communications create interstate or international wires. Further, the communications with Jane included material misstatements, which caused Jane to part with her money.

///

///

///

///

///

///

///

///

30. Based on the above, there is probable cause to believe Mohammed committed Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, Wire Fraud, in violation of 18 U.S.C. §§ 1343, 2, and Impersonating a Federal Agent, in violation of 18 U.S.C. §§ 912, 2.

Respectfully submitted,

Shaun Schrader
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on this 14th day of May, 2025.

Kathleen L. DeSoto
United States Magistrate Judge

9